IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SOVEREIGNTY JOESEPH HELMUELLER
SOVEREIGN FREEMAN,

                         Plaintiff,                    OPINION and ORDER

        v.
                                                       22-cv-445-jdp

CHARLES MEYER and FRED MANGINE,

                         Defendants.

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman, without counsel, is currently incarcerated at Waupun Correctional Institution. Helmueller alleges that when he was detained at the St. Croix County Jail, defendant officers sexually humiliated him by giving him a rough pat search and escorting him through the jail with his penis exposed. I granted Helmueller leave to proceed on Fourteenth Amendment claims against the officers.

This order addresses numerous filings by the parties, including defendants' motion for summary judgment. I will grant defendants' motion on Helmueller's claim about the pat search, but I will deny defendants' motion on Helmueller's claim about being escorted while exposed.

PRELIMINARY MATTERS

A. **Helmueller's motion to compel discovery**

Helmueller has filed a motion to compel discovery. Dkt. 77. That motion is difficult to follow but I take him to be seeking various jail materials including incident reports, video, and defendant Meyer's disciplinary record. Defendants' response is largely the same that county officials took in other of Helmueller's recent cases in this court: they do not possess the materials that Helmueller seeks and they are not the legal custodian of those materials.

My ruling on Helmueller's motion to compel will be the same as in those previous cases. *See Helmueller v. Johnson*, No. 22-cv-556-jdp, 2024 WL 307509, at *4 (W.D. Wis. Jan. 26, 2024); *Helmueller v. Bradac*, No. 22-cv-455-jdp, 2024 WL 688524, at *3 (W.D. Wis. Feb. 20, 2024). Under Federal Rule of Civil Procedure 34(a)(1), discovery is limited to materials in a party's "possession, custody, or control." Generally, in similar cases in this court involving state or municipal defendants, defendants provide the type of discovery requested here as a courtesy to plaintiffs and to avoid having the government entity that employs the defendants receive a torrent of subpoenas. But Rule 34 doesn't require defendants to produce materials merely because they have access to those materials through their employment; the question is whether "the party has a legal right to obtain them," not just the "practical ability" to obtain them. *Dexia Credit Loc. v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004) (internal quotation omitted); *see also Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 838–39 (7th Cir. 2014) (citing test for control in *Dexia*). Courts in this circuit have concluded that prison employees are not required to obtain those documents from their employer. *Robinson v. Moskus*, 491 F. Supp. 3d 359, 366 (C.D. Ill. 2020) (Illinois Department of Corrections employees cannot be compelled to produce DOC's documents); *Armour v. Santos*, No. 19-cv-678, 2022 WL 16572006, at *3 (S.D. Ill. Nov. 1, 2022) (same).

So as a general matter, defendants do not have to obtain and then turn over the material Helmueller seeks. But it would be unusual for a defending party not to have already acquired some of the material that Helmueller seeks. In particular, both parties have already submitted to the court video footage and incident reports. If there is any material that Helmueller seeks that defendants possess yet have not already disclosed to him, defendants are required to make that material available to Helmueller.

I will give defendants a short time to respond to this order, confirming whether they possess any of the material Helmueller seeks, and if so, to produce that material. Otherwise, Helmueller will have to seek this material directly from the county or other entities having control over the items, whether by subpoena or other avenue. Because Helmueller's claim against Meyer is proceeding to trial, Meyer's disciplinary records could potentially be used to impeach his credibility at trial. I will give Meyer a short time to submit those records for *in camera* review.

**B.  Helmueller's motion for extension of time**

Helmueller filed a motion for extension of his deadline to file his summary judgment opposition, Dkt. 91, but he followed with a timely brief in opposition that also serves as responses to defendants' proposed findings of fact and a declaration. I will deny his motion for extension of time as moot.

**C.  Defendants' motion to correct the record**

Defendants move to correct the evidence that they submitted in support of their motion for summary judgment on exhaustion grounds, stating that they inadvertently provided a version of jail grievance procedures that was not in effect at the relevant time. Dkt. 100. This motion appears to be in response to an order issued in another of Helmueller's cases noting a potential discrepancy with the date of the jail handbook submitted by St. Croix County defendants. *See Helmueller v. Hallet*, No. 22-cv-693-jdp (W.D. Wis.), Dkt. 49. I will grant the motion to correct, but it doesn't affect the outcome of this case: I have already denied defendants' exhaustion-based summary judgment motion and defendants do not seek reconsideration of that decision.

MOTION FOR SUMMARY JUDGMENT

**A.  Undisputed facts**

Defendants object to many of Helmueller's responses to their proposed findings of fact, stating that he did not support each of those facts by citing admissible evidence, as required by this court's procedures. But the document in which Helmueller includes his responses to defendants' proposed findings, Dkt. 92, includes his declaration under penalty of perjury that the version of events he discusses is true, so I will consider his proposed findings that are within his firsthand personal knowledge.

I draw the following facts from the parties' proposed findings of fact and video footage of the events.

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman was an inmate at the St. Croix County Jail in 2019. Defendants Charles Meyer and Fred Mangine are deputies.

On November 9, 2019, jail staff discovered that a piece of a sign in E block was missing, presenting a security concern because the missing material was likely sharp. The decision was made to pat search and strip search inmates on E block.

Officers brought Helmueller into a hallway to pat search him. A pat search involves an officer patting down or searching the outer surfaces of an inmate's uniform for the purpose of locating weapons or other contraband. Defendants say that a pat search does not involve a search under an inmate's clothing; Helmueller notes that officers "run [their] hand around the waistband" of an inmate's pants. *Id.*, at 14.

A group of six officers was present, including Meyer and Mangine. Lieutenant Coleman pat searched Helmueller, and then defendant Mangine followed with what defendants call a "secondary [pat] search." Dkt. 95, ¶ 12. Helmueller states that "Mangine was so rough when

4

he patted me down that he pulled my pants down past my penis and did not pull them up past my penis when he pulled them back up." Dkt. 92, at 15. Defendants state that during the search, Helmueller's "pants shifted down slightly and were immediately pulled back to the correct position." Dkt. 95, ¶ 15. They deny that Helmueller's penis was exposed at this point, and Mangine states that Helmueller never told him that it was. Helmueller states that he did tell the group of officers this as they handed Helmueller off to Meyer to walk to the booking area.

Defendant Meyer escorted Helmueller down the hallway and through door 15 into the booking area; strip searches of inmates were being conducted in the "changeover room" next to door 15. Two female deputies walked behind Meyer and Helmueller as they walked to the changeover room.

The parties provide video footage of the pat search and much of Helmueller's walk down the hallway and into the changeover room (there isn't accompanying audio). But most of this footage has been censored by blurring Helmueller's groin area; I take defendants to be saying that they preserved only copies intended as responses to open-record requests. There are brief portions of the footage that are uncensored. At the beginning of Helmueller's walk down the hallway and the end of it, when he walks through door 15, his pants appear low but his penis is not visible. *See* Dkt. 86-2 (placeholder for attached video footage) (2:24–2:29 of "Video 3" shows the beginning of Helmueller's walk down the hallway and 0:10 of "Video 2" shows Helmueller walking through door 15). But in the remaining material portions of the footage, Helmueller's groin is blurred. For purposes of defendants' summary judgment motion, I must infer that there is something sensitive on that footage that necessitated the blurring.

Meyer states that he initially had no reason to suspect that Helmueller's penis might be exposed. Helmueller states that at some point he said, "are you gonna put my dick back in my pants." Dkt. 92, at 18. Meyer states that this occurred within a few feet of door 15, and that he didn't think it was appropriate for him to put Helmueller's penis back into his pants, nor would it have been safe to take Helmueller's handcuffs off in the hallway to have Helmueller fix his pants. Helmueller says that he said this "as [he] was handed off to Meyer more than a few feet from door 15" and that Meyer laughed at him. *Id.* Meyer told Helmueller that he could adjust his pants himself when they got into the changeover room. Meyer escorted Helmueller through door 15 and into the changeover room.

I will discuss additional facts as they become relevant to the analysis.

## B. Analysis

I granted Helmueller leave to proceed on claims that defendants needlessly humiliated him: defendant Mangine by treating him roughly during the pat search and defendant Meyer by "parading" him in front of female officers and through high traffic areas of the prison with his penis exposed. Dkt. 9. Because Helmueller was a pretrial detainee at the time of the events, his claims fall under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, not the Eighth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–400 (2015); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). Jail staff violate the Fourteenth Amendment if: (1) they acted intentionally, knowingly, or recklessly when considering the consequences of their actions; and (2) their actions were objectively unreasonable. *See McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018).

I'll start with Helmueller's claim against Mangine for treating him roughly during the pat search, including by pulling down his pants and exposing his penis. Based on the video

footage of the incident, I conclude that no reasonable jury could conclude that Mangine violated the Fourteenth Amendment. Courts should not credit a party's version of events if it is contradicted by video evidence. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The video shows a routine pat search; there's no indication that Mangine treated Helmueller roughly during it. Helmueller is correct that his pants fell down slightly while Mangine was patting his legs, but Mangine immediately pulled Helmueller's pants back up. The only reasonable inference from the video is that Helmueller's pants were loose, not that Mangine was intentionally trying to expose Helmueller's penis. Because Mangine's actions were objectively reasonable, I will grant defendants' motion for summary judgment om the claim against Mangine.

That leaves Helmueller's claim against Meyer. In his complaint, Helmueller alleged that Meyer "paraded" him through the booking area of the jail with his penis out. Dkt. 1, at 3. That suggested that Meyer had intentionally humiliated Helmueller by walking him though high-traffic areas of the jail and in front of female staff with Helmueller's penis exposed. The video shows that this is not what happened. Meyer did not escort Helmueller through populated areas of the jail. The two female officers joining the group of officers for the pat search walked behind Helmueller as Meyer escorted him down the hall; Helmueller concedes that they did not see his penis during Meyer's escort. The only other officer (besides Meyer) who could have seen Helmueller's penis during the escort was a female officer who passed by door 15 about ten seconds after Helmueller went through it, coming from the other direction. That is, one officer might have been able to see Helmueller's penis from well down the hall, a far cry from Helmueller's initial allegations that he was "paraded" through the jail.

Nonetheless, even if no other staff member saw Helmueller, it would almost certainly be unreasonable to intentionally walk an inmate around the jail with the inmate's penis

exposed. But the reasonableness analysis depends on the severity and duration of Helmueller's exposure and what Meyer knew about it. We can't tell how severe the exposure was because the video footage is mostly blurred. What limited footage we have suggests minimal exposure, but I must infer from county officials blurring the rest of the footage that part of Helmueller's pubic area or penis was visible on that footage.

The parties dispute when Meyer became aware of Helmueller being exposed; Meyer says it was only when they were near door 15, and it made more sense to quickly usher him through the door rather than stop where others might see him. Helmueller states that he told Meyer at the beginning of his escort. Defendants argue that the video proves Meyer's version, stating that "Deputy Meyer did not change his expression or look down at Mr. Helmueller's pants until just before reaching Door 15, which indicates this is probably the time when Mr. Helmueller first made the statement about his penis being out of his pants." Dkt. 96, at 10 (citing "Video 3" at 2:32). And they contend that Meyer didn't laugh at Helmueller; they state that Meyer only smiled or laughed until Helmueller did first; the video shows both of them smiling as they walk down the hallway. *Id.* at 2:32–2:36. But as counsel for defendants is surely aware, "probably" isn't the standard by which this court can evaluate a motion for summary judgment. I must credit Helmueller's statement that he told Meyer about being exposed at the beginning of the escort unless the video conclusively disproves it, which the video does not. And although I agree with defendants that Helmueller doesn't appear to be offended or humiliated by Meyer—instead it looks like both he and Meyer are smiling about the situation—that's really a question concerning damages, not whether it would be objectively unreasonable for an officer to escort a prisoner with his penis exposed.

Because there are disputed issues of material fact remaining on Helmueller's Fourteenth Amendment claim against Meyer, I will deny that portion of defendants' motion for summary judgment and that claim will proceed to trial.

To help Helmueller prepare for trial, I will shortly issue a separate trial preparation order that provides detailed information about how trial works and how Helmueller should prepare. Helmueller should review the trial preparation order carefully and notify defendants' counsel or the court if he has specific questions about preparing for trial.

## ORDER

IT IS ORDERED that:

1. Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman's motion to compel discovery, Dkt. 77, is GRANTED in part. Defendant Meyer may have until April 1, 2024, to respond to plaintiff and the court regarding discovery materials in his possession.

2. Plaintiff's motion for extension of time, Dkt. 91, is DENIED as moot.

3. Defendants' motion to correct evidence, Dkt. 100, is GRANTED.

4. Defendants' motion for summary judgment, Dkt. 83, is GRANTED in part.

5. Defendant Mangine is DISMISSED from the case.

Entered March 19, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge