IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SOVEREIGNTY JOESEPH HELMUELLER
SOVEREIGN FREEMAN,

|  |  |  |
|---|---|---|
| | Plaintiff, | OPINION and ORDER |
| v. | | |
| | | 22-cv-445-jdp |
| CHARLES MEYER, | | |
| | Defendant. | |

---

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman, without counsel, alleges that when he was detained at the St. Croix County Jail, defendant officers sexually humiliated him by giving him a rough pat search and escorting him through the jail with his penis exposed on the way to a room where he would be strip searched. This opinion concerns defendant Deputy Charles Meyer's motion for reconsideration of my March 19, 2024 order partially denying defendants' motion for summary judgment. Dkt. 147. Defendants' motion was supported by video footage of the events, but that footage was censored by blurring Helmueller's groin area. Dkt. 86-1 (placeholder entry for attached footage). I granted summary judgment to defendants on Helmueller's claim against defendant Deputy Fred Mangine about being pat searched roughly, and I dismissed Mangine from the case. Dkt. 109, at 7. I denied defendants' motion for summary judgment on Helmueller's claim about defendant Meyer escorting him down a hallway with his penis exposed. *Id.* at 7–9.

Defendant Meyer moves for reconsideration based on counsel's discovery of an uncensored version of the videos showing Meyer's escort of Helmueller. Dkts. 149-1 and 149-2 (placeholder entry for attached footage). After considering that footage, I will reconsider my previous ruling, grant Meyer summary judgment, and dismiss the case.

ANALYSIS

## A.  Preliminary matters

Before defendant Meyer filed his motion for reconsideration, Helmueller filed a motion that he calls a motion to compel discovery, stating that defendants failed to turn over body camera footage from officers at the scene of the relevant events and Meyer's disciplinary history. Dkt. 111. This motion crossed in the mail with the portion of my summary judgment opinion discussing Helmueller's previous motion to compel these and other materials. The key point in that ruling was that—as I had informed Helmueller in multiple previous cases—defendants were not required to produce materials merely because they had access to those materials through their employment. Dkt. 109, at 2.

Nonetheless I noted that it would be unusual for a defending party not to have already acquired some of the material that Helmueller sought; I directed defendants to respond to my order, confirming whether they possessed any of the material Helmueller sought, and if so, to produce that material. *Id.* at 2–3. Defendants responded that they had additional reports and the uncensored footage that they would send Helmueller. Dkt. 113. So defendants have appropriately turned over the material that they possess. If Helmueller still seeks body camera footage, he needs to obtain it directly from the county. As for Meyer's disciplinary history, Meyer responds that there are no such records. I will deny Helmueller's motion to compel discovery.

Defendant Meyer moves to seal the new uncensored versions of the video footage that he has submitted showing Helmueller's exposed genitals. Dkt. 152. There is a "strong presumption of public disclosure" of the "materials that formed the basis of the parties' dispute and the district court's resolution." *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 548 (7th

2

Cir. 2002). I am relying on the uncensored footage in ruling on Meyer's motion for reconsideration, but out of respect for Helmueller's privacy I will order that footage sealed. The uncensored versions of the footage and my description of that footage in this order should be enough for the public to understand the details of the case without having access to the unredacted footage. Either party or any interested member of the public may move to unseal that footage.

Defendant Meyer moves to seal various exhibits that he filed in anticipation of trial. Dkt. 196. Some of those exhibits are copies of the videos that he has already submitted in support of his motion for summary judgment, some are videos of events unrelated to Helmueller's claims but concerns events in which Meyer states that Helmueller has willingly exposed himself, and some are prison incidents reports including Helmueller's medical information. *See* Dkt. 187; Dkt. 188; Dkt. 190; Dkt. 191; Dkt. 194; Dkt. 195. Because I am granting Meyer's motion for reconsideration and dismissing the case at the summary judgment stage, trial exhibits are not materials that I considered in deciding the case. I will grant Meyer's motion to seal them.

## B. Motion for reconsideration

Requests for reconsideration of interlocutory orders are "governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason" for it. *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 572 (7th Cir. 2006). Meyer contends that the new uncensored footage meets this standard because it plainly shows that his actions were reasonable. In particular, Meyer argues that the footage shows that Helmueller's penis was not visible at the start of Meyer's escort, and that Meyer didn't see Helmueller's penis until they were about halfway down the hallway. Meyer argues that the video shows that, upon

his discovery of Helmueller being exposed, it was reasonable for him to finish the escort by leading Helmueller into a private area instead of stopping in the hallway.

Because Helmueller was a pretrial detainee at the time of the events, his claims fall under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, not the Eighth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–400 (2015); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). "Although detainees do not relinquish all bodily rights to privacy as soon as they are placed in jail cells, those privacy rights are substantially diminished." *Alicea v. Cnty. of Cook*, 88 F.4th 1209, 1216 (7th Cir. 2023). But that doesn't mean that detainees may be needlessly humiliated. Jail staff violate the Fourteenth Amendment if: (1) they acted intentionally, knowingly, or recklessly when considering the consequences of their actions; and (2) their actions were objectively unreasonable. *See McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018).

Helmueller opposes the motion for reconsideration, arguing that the uncensored footage doesn't justify reconsidering my denial of summary judgment. But as I stated in my summary judgment opinion, "the reasonableness analysis depends on the severity and duration of Helmueller's exposure and what Meyer knew about it." Dkt. 109, at 8. The uncensored footage provides more clarity about precisely what transpired during the escort, in particular showing that Helmueller's penis became visible partway through the escort. Based on that footage, I conclude that no reasonable jury could find that Meyer's actions were objectively unreasonable. So I will grant Meyer's motion for reconsideration, grant summary judgment to Meyer on Helmueller's Fourteenth Amendment claim against him, and dismiss the case.

There are two distinct points during the course of the escort in which I must consider the reasonableness of Meyer's conduct: (1) at the conclusion of the officers' pat searches, when

4

Meyer began to walk Helmueller down the hall to the room where he would be strip searched; and (2) when Meyer and Helmueller were partway down the hallway and Helmueller's penis became visible.

Helmueller states that as he was handed off to Meyer to start the escort, he asked if Meyer could put his penis back in his pants. Meyer states that Helmueller said this near the end of the escort, but I must credit Helmueller's version because neither the original nor uncensored versions of the video footage conclusively disprove it. Helmueller also states that Meyer responded to his request by laughing at him; the video conclusively shows that any laughter by Meyer didn't happen until they were partway down the hallway (when both Helmueller and Meyer appear to be smiling about the mishap), so I will not credit this part of Helmueller's version.

The relevant question is whether it was objectively reasonable for Meyer to start the escort without adjusting Helmueller's pants. Even assuming that Helmueller asked Meyer to put his penis back in his pants, I conclude that no jury could find this portion of Meyer's actions unreasonable. Given how much Helmueller's pants shifted during the pat searches, Meyer knew that Helmueller's pants were loose fitting and I can infer that he knew that Helmueller wasn't wearing underwear. But the video conclusively shows that Helmueller's penis wasn't visible to the deputies at this point; perhaps because Helmueller was also wearing a longer black T-shirt under his orange jail-issued shirt that helped to cover his midsection. *See* Dkt. 149-1, at 7:42:13–7:42:16 p.m.[1] A reasonable officer in Meyer's position wouldn't have thought that the escort would expose Helmueller's penis. It might have been the better

---

[1] I refer to the timestamp on this footage because that's how the parties refer to specific portions of the footage.

course of action for Meyer to double-check Helmueller's pants before beginning the escort, but failure to take the most prudent course of action doesn't violate the Constitution. *Cf. Plakas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir. 1994) ("The Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases. The only test is whether what the police officers actually did was reasonable."); *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 775 (6th Cir. 2004) ("There may be more than one reasonable response to a given situation, and when this is so, the Fourth Amendment does not require officers to use the most prudent course of action to handle it." (internal quotation omitted)).[2] Given the information known to Meyer at the time, it wasn't unreasonable for him to go ahead with the escort.

That leaves the second key point during the escort. The uncensored footage shows that after Helmueller and Meyer took several steps down the hallway, most of Helmueller's penis became exposed out of the top of his loose-fitting pants. *See* Dkt. 149-1 at 7:42:19 p.m. Almost immediately, both Helmueller and Meyer looked down and saw his penis. It's undisputed that at this point Helmueller said something to Meyer about putting his penis back in his pants. Meyer barely broke stride and then continued with Helmueller to turn the corner of the hallway, enter a door to the booking area, and then go into the room where the strip search would be held. *Id.* at 7:42:19–31 p.m. It took about eight seconds after exposure of Helmueller's penis for Helmueller and Meyer to reach the door.

---

[2] Courts in the Seventh Circuit apply the same "objective reasonableness" standard to claims under the Fourth and Fourteenth Amendments. *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020).

In support of his contention that it was unreasonable for Meyer to complete the escort without stopping to fix his pants, Helmueller continues to argue that that he was "paraded" through the jail, particularly in front of female officers. But I already rejected that characterization in my summary judgment opinion and nothing in the uncensored version of the footage changes my analysis. Meyer did not escort Helmueller through populated areas of the jail, and the two female officers walking behind him and Meyer did not see Helmueller's penis. The only other officer who could have seen Helmueller's penis during the escort was a female officer who passed by the door to the booking area about ten seconds after Helmueller went through it, coming from the other direction. As I stated in my summary judgment opinion, one officer perhaps being able to see Helmuellers' penis from well down the hall is "a far cry from Helmueller's initial allegations that he was 'paraded' through the jail." Dkt. 109, at 7.

Meyer says that once he saw Helmueller's penis, it made more sense to quickly usher him through the door rather than stop in the hallway where others might see him. Using the Fourteenth Amendment's objective test, it doesn't really matter precisely what Meyer thought. But the dilemma for a reasonable officer in Meyer's position was clear: either stop to readjust Helmueller's pants, in which case the two assisting female officers likely would have seen Helmueller's penis, or leave Helmueller's penis out and keep walking several more paces to the door, where there was more privacy. Considering the totality of the circumstances, without the benefit of hindsight, I conclude that no reasonable jury could find in Helmueller's favor on this aspect of his claim.

As with the first part of Helmueller's claim, it is not clear to me that Meyer made the most reasonable choice by continuing the escort rather than stopping to adjust Helmueller's

pants. But the question isn't whether Meyer made the most reasonable choice, it's simply whether his choice was one of the reasonable choices before him. Here, Meyer was faced with a split-second decision without a perfect solution. Ultimately this was a mishap that should not have occurred; there are unanswered questions about how Helmueller came to have ill-fitting pants and no underwear, but there is no indication that this was Meyer's fault. In any event, the uncensored video makes it clear that Helmueller's exposure in the hallway was very brief, and that Meyer did not gratuitously display Helmueller's nudity or otherwise act unreasonably in responding to Helmueller's exposure. So I will grant Meyer's motion for reconsideration and I will grant his motion for summary judgment.

## C. Remaining motions

I will deny as moot the parties' remaining trial-related motions, including Helmueller's motion for the court's assistance in recruiting him counsel to conduct the trial, Dkt. 122.

ORDER

IT IS ORDERED that:

1. Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman's motion to compel discovery, Dkt. 111, is DENIED.

2. Defendant Charles Meyer's motion to seal the uncensored video footage submitted at Dkt. 149-1 and 149-2, Dkt. 152, is GRANTED. Either party or any interested member of the public may move to unseal that footage.

3. Defendant's motion to seal trial exhibits, Dkt. 196, is GRANTED. The clerk of court is directed to seal Dkt. 187; Dkt. 188; Dkt. 190; Dkt. 191; Dkt. 194; and Dkt. 195,

4. Defendant's motion for reconsideration of the court's March 19, 2024 order denying his motion for summary judgment, Dkt. 147, is GRANTED.

5. Defendant's motion for summary judgment, Dkt. 83, is GRANTED.

6. The parties' remaining motions are DENIED as moot.

7.  The clerk of court is directed to enter judgment for defendants and close the case.

Entered April 16, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge